**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS BEAUDOIN,

            Plaintiff,

v.                                                        Case No. 08-CV-14289-DT

CHRISTINE C. WHITE, Michigan Racing
Commissioner; DARREL PARKER, State
Steward of Racing; A[NTHONY] GRANT, Huron
Twp. Police Officer; MR. GARRISON, State
Steward; THOMAS GRIFFIN, Steward;
RICHARD JEWELL, Racing Commission
Employee; and JIM BOWES, Lansing Racing
Commission Deputy,

            Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS WHITE, PARKER, GARRISON,
GRIFFIN, BOWES, AND JEWELL'S MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR DECLARATORY RULINGS**

        Pending before the court is a motion to dismiss filed by Defendants Christine C.

White, Darrel Parker, "Mr. Garrison," Thomas Griffin, Richard Jewell, and Jim Bowes.

Plaintiff has filed a response in opposition to the motion, and the court conducted a

hearing on the matter on October 28, 2009.  For the reasons below, the court will grant

Defendants' motion to dismiss.

**I.  BACKGROUND**[1]

        Plaintiff Thomas M. Beaudoin has been licensed for employment, primarily for

selling feed or as a horse trainer, by various State Racing Commissions since 1958.

_____

        [1]The following facts are taken from Plaintiff's pro se complaint.  Additional facts
will be set forth in the Discussion section.

(Compl. ¶ 2.)  According to Plaintiff's complaint, in 1974, one of Plaintiff's horses was "purposefully held back in a race at Hazel Park."  (*Id.* ¶ 3.)  Plaintiff threatened to alert the F.B.I. and, in 1975, "[j]ockey's [sic] were prosecuted and sentence to Federal prison."  (*Id.*)  Since that time, according to Plaintiff's Complaint, "the State Racing Commission employees have harassed and deprived Plaintiff of his civil rights."  (*Id.*)

In 2000, current and former Defendants Lou Alosso, Thomas Griffin and Kevin Sheen were the Stewards at Great Lakes Downs, charged with supervising and regulating horse racing.  (*Id.* ¶ 12.)  On August 18, 2000, these Stewards sent a notice to Plaintiff that a hearing would be held on August 24, 2000 and demanding that Plaintiff show cause why he should not be excluded from the race track.[2]  (*Id.* ¶ 13)  Plaintiff contends that Ron Cooper, the Fruitport Township Supervisor and Chief of Township Police, "ordered" Plaintiff not to attend the hearing.  (*Id.* ¶ 14.)  Cooper attended the hearing and presented "proofs on Plaintiff's behalf as invited by the Stewards, 'Notice of Hearing.'" (*Id.* ¶ 15.)  Cooper made various legal and factual arguments on behalf of Plaintiff.  (*Id.* ¶¶ 15-22.)  At the conclusion of the hearing the Stewards issued a ruling ejecting and banning Plaintiff from Michigan race tracks (the "Ruling" or "Ruling 79").  (*Id.* ¶¶ 22-23.)  The ruling states, "It is the unanimous ruling of the Board of Stewards that Thomas Beaudoin is denied access, use, and privileges of all grounds, live or simulcast, under the jurisdiction of the Office of the Racing Commissioner . . . ."  (Stewards' Ruling 79, Defs.' Mot. Ex. A.)

---

[2]The Complaint does not explicitly state the nature of the hearing, although it appears to have been related to an allegation that Plaintiff assaulted a security guard. (Compl. ¶¶ 17-21.)

Plaintiff contends that he was immune from orders of the Racing Commission. (*Id.* at ¶ 25.)  He further contends that "[o]n August 28, 2000, in a lawsuit, Plaintiff notified the Racing Commissioner of his wish to appeal the ejection of August 25, 2000." (*Id.* ¶ 26.)  Plaintiff claims he again appealed Ruling 79 to the Michigan Racing Commissioner.  (*Id.*)  According to Plaintiff, the Racing Commissioner did not conduct a review of the Stewards' action, nor did he issue any order affirming their findings.  (*Id.* ¶ 26.)  Plaintiff asserts that, because the Commissioner did not review the Ruling, the ejection of Plaintiff ended 90 days after Plaintiff's appeal was filed.  (*Id.* ¶ 28.)

In 2006, Plaintiff applied for a Vendors License with the Michigan Racing Commissioner Christine White.  (Compl. ¶ 29.)  Plaintiff received a letter from White indicating that he could not be considered for licensing until the Stewards' Ruling was lifted and that before that could be done, several outstanding issues needed to be addressed.  (*Id.* ¶ 30.)  The letter also denies Plaintiff's request to rescind Stewards' Ruling 79.  (4/21/09 Letter, Defs.' Mot. Ex. C.)  Plaintiff contends that he worked with Deputy Racing Commissioner Jim Bowes to submit the paperwork requested by White and that Bowes authorized him to submit a license application.  (Compl. ¶ 31.)  Plaintiff was allowed onto the Great Lakes Downs racetrack on May 22, 2006, to submit his application and, on May 23, 2006, the Stewards ruled that the license application be sent to the Racing Commissioner's office in Lansing, Michigan for "review of the prior racing violations."  (*Id.* ¶¶ 31-32.)  Plaintiff was informed on June 5, 2006, that the application had been checked for accuracy and returned to the Stewards at Great Lakes Downs.  (*Id.* at ¶ 33.)  Plaintiff was then informed by Steward Darrel Parker that the Stewards were examining the application before approving it.  (*Id.* ¶ 34.)  Plaintiff

3

checked weekly with the Stewards, but each time was told that they were processing the application. (*Id.* ¶ 35.) On July 18, 2006, Plaintiff went to the Racetrack to find out if the application had been approved. (*Id.* ¶ 36.) He was ejected for trespassing and charged in District Court. (*Id.*)

On September 16, 2006, Plaintiff issued a complaint to Racing Commissioner White and asked for a hearing on the ejection. (Compl. ¶ 37.) White did not grant Plaintiff a hearing and informed Plaintiff that he was ejected because the August 25, 2000 Stewards Ruling was still in effect. (*Id.* ¶ 38.) Plaintiff contends that White also stated that his license could not be approved until the trespassing charges were "abdicated." (*Id.* ¶ 44.)

On October 16, 2006, the Muskegon County Prosecutor dismissed the charges against Plaintiff because, according to Plaintiff, Jim Bowes admitted that Plaintiff had permission to be at the race track. (*Id.* ¶ 39.)

Plaintiff contends he was denied due process because Defendants accepted his $25.00 application fee, but then suspended his licensing privileges without a pre- or post- suspension hearing. (*Id.* ¶ 41.) Plaintiff also contends that he was denied due process because White allegedly failed to investigate regarding his ejection. (*Id.* ¶¶ 48-49.) Plaintiff's complaint implies that his 2006 application was never denied or granted, and thus he was denied due process. (*Id.* ¶¶ 59-63.) Plaintiff also claims malicious prosecution by Darrel Parker, Christine White and Jim Bowes for pressing the trespassing charge. (*Id.* ¶¶ 57, 84.)

On July 14, 2008 Plaintiff submitted an Occupational License application as a vendor to the State Steward, Mr. Garrison, who was apparently appointed by the Racing

4

Commissioners to approve or deny License applications.  (*Id.* ¶¶ 65-66.)  Mr. Garrison refused to approve or deny the application or, according to Plaintiff, even examine it. (*Id.* ¶ 67.)  Plaintiff claims that he was therefore denied due process.  (*Id.* ¶ 68.)

On July 15, 2008, Richard Jewell "summoned" Plaintiff to meet Officer A. Grant, who then issued Plaintiff a trespassing notice.  (*Id.* ¶ 69.)  Plaintiff states he was given five minutes to vacate the property or be arrested.  (*Id.* ¶ 70.)  The notice given to Plaintiff indicates that Grant was the authorized agent for the owner of the property. (*Id.* ¶ 71.)  Grant was the Huron Township Police Officer sent to investigate the trespass complaint.  (*Id.*)  Plaintiff asserts that Grant's "detainment and eviction of Plaintiff lacked due process and probable cause because the ejection from Pennical [sic] Downs was without a written order from the Racing Commissioner, which was in violation of Racing Rule 431.1130 #1, 2."  (*Id.*)

On July 21, 2008, Plaintiff sent a letter to Racing Commissioner White requesting a hearing regarding the July 15, 2008 ejection.  (*Id.* ¶ 72.)  On August 13, 2008, White responded that the August 2000 Stewards Ruling was still in effect.  (*Id.* 74.)  Plaintiff disputes that the Ruling is still in effect; he argues that, in any event, a hearing is required on written request and White has no discretion to deny a hearing.  (*Id.* ¶¶ 74-78.)  Plaintiff claims that the Commissioner's denial of a hearing violated his due process rights.

Plaintiff also asserts that in January 2007, Plaintiff was licensed and working in Ohio as an owner and racing horse trainer.  (Compl. ¶ 81.)  Plaintiff contends that Michigan State Steward Darrel Parker falsely informed the Ohio State Racing Commission that Plaintiff's racing license was under suspension by the Michigan Racing

5

Commission.  (*Id.*)  Plaintiff's Ohio Racing License was rescinded and Plaintiff had to sell his horses at a loss.  (*Id.*)  Plaintiff states that he sent a letter to Commissioner White on January 4, 2008 and requested a hearing, but no reply was sent to Plaintiff. (*Id.* ¶ 84.)

Plaintiff argues:

> Defendants, acting under color of State law, have deprived Plaintiff of his Constitutional Rights of free speech, equal protection of the laws, and due process of law under the First, Fifth and Fourteenth Amendments to the United States Constitution in violation of [42 U.S.C. § 1983].

> Plaintiff has been damaged as a direct and proximate result of Defendants['] actions, in that his reputation, in his chosen trade has been severely tarnished to the point whereby he has been denied the right to earn a living in this profession.  He has been caused to suffer extreme mental anguish.  From the season of 2006 to present date, he has lost his customary earnings and has incurred substantial attorney fees in attempting to vindicate his rights.

> The actions of the Defendants have been deliberate and malicious.

(*Id.* ¶¶ 87-89.)

Plaintiff seems to allege that Defendants have engaged in illegal conduct in order to "keep [him] quiet" because Defendants "did not want the public to know how crooked and cruel horse racing has descended to in Michigan."  (*Id.* ¶¶ 93-94.)

## II. STANDARD[3]

---

[3] Defendants bring their motion as a motion pursuant to Rule 12(b)(6), although both parties refer to documents attached to Plaintiff's complaint and the parties' briefs. A Rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings, *Gunasekera v. Irwin*, 551 F.3d 461, 469 n.4 (6th Cir. 2009); however, when "a document is referred to in the complaint and is central to the plaintiff's claim . . . , the defendant may submit an authentic copy to the court to be considered on a motion to dismiss," *Greenberg v. Life Insurance Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)) (internal quotation marks omitted).  Here, Defendants have submitted copies of

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000).

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material

---

certain documents and letters referred to in Plaintiff's complaint, and Plaintiff has not challenged their authenticity. (Indeed, Plaintiff summarized these documents in his complaint, and his summaries are consistent with the language of the documents themselves). Even if the court were to address Defendant's motion under Federal Rule of Civil Procedure 56 summary judgment standard, it would not alter the court's analysis.

7

elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted).  A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations.  *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing' –that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must put forth

enough evidence to show that there exists "a genuine issue for trial."  *Horton,* 369 F.3d

at 909 (citing *Matsushita*, 475 U.S. at 587 (1986).  Summary judgment is not

appropriate when "the evidence presents a sufficient disagreement to require

submission to a jury."  *Anderson*, 477 U.S. at 251-52 (1986).

### III.  DISCUSSION

Plaintiff's complaint sets forth a myriad of allegations against Defendants.

Defendants have moved to dismiss the complaint in its entirety.  The nature of Plaintiff's

pro se pleadings make it somewhat difficult to discern the exact nature of the "claims"

asserted.[4]  The court will first address those claims which are sufficiently pleaded under

Federal Rule of Civil Procedure 8, and then address any remaining allegations.

### A.  Eleventh Amendment Immunity

Defendants argue that the case against them should be dismissed in its entirety

because Plaintiff seeks monetary relief from state agents.   Defendants thus contend

that Plaintiff's action is barred by the Eleventh Amendment.  Plaintiff, however, has

explicitly stated that he is suing Defendants in their individual capacities, not their official

capacities.  The Supreme Court has held that "state officials, sued in their individual

capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does

not bar such suits, nor are state officers absolutely immune from personal liability under

§ 1983 solely by virtue of the 'official' nature of their acts."  *Hafer v. Melo*, 502 U.S. 21,

---

[4]The court's analysis is hampered by the mercurial qualities of Plaintiff's
allegations.  Because the motion was brought under Federal Rule of Civil Procedure 12,
the court has limited its analysis to the facts as pleaded in the complaint, rather than the
additional or somewhat amended facts sporadically asserted elsewhere.

31 (1991)**.**   Defendants admit that Plaintiff has sued them in their individual capacities, but argue that "a logical review of Plaintiff's complaint suggests that he is challenging the [Office of the Racing Commissioner's] policy and procedure for enforcing Steward's Ruling #79."  (Defs.' Mot. Br. at 7.)  Nonetheless, Plaintiff, as master of his complaint, has specified that Defendants are sued in their individual capacities, which states a claim under § 1983.  The court will therefore deny Defendants' request to dismiss the complaint based on Eleventh Amendment Immunity.

## B.  Statute of Limitations

The underlying event in most of Plaintiff's allegations relates to Stewards' Ruling 79, issued on August 25, 2000.   In Michigan, the catch-all statute of limitations for personal actions is six years after the claim accrues.  Mich. Comp. Laws § 600.5813.  "[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."  Mich. Comp. Laws § 600.5827.  Fundamentally, much of Plaintiff's complaint implicitly challenges the validity and enforcement of Stewards' Ruling 79.  Any action challenging the issuance of the Stewards' Ruling, however, must have been brought within six years of its issuance.  Accordingly, any challenge to the validity of that ruling is barred by the statute of limitations.  For this reason, the court rejects Plaintiff's argument that Stewards' Ruling 79 is no longer enforceable.  Plaintiff makes this argument both in response to Defendants' motion to dismiss, as well as in his "Motion for Declaratory Rulings and Injunction Against Continued Unconstitutional Conduct."  Plaintiff claims that the Ruling expired 90 days after Plaintiff appealed the Ruling to the Office of the Racing Commission, and that Defendants act improperly in enforcing it.  Plaintiff's argument,

10

while creative, amounts to a challenge to the validity of Ruling 79 that attempts, unsuccessfully, to vault the statute of limitations.[5]   His motion will be denied.

### C. Malicious Prosecution

Plaintiff's complaint asserts a malicious prosecution action against Defendants Parker and White related to his 2006 ejection from Great Lakes Downs Racetrack.[6] "[A]ctions for malicious prosecution have historically been limited by restrictions that make them difficult to maintain."  *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 609 (Mich. 1998).  To make out a claim of malicious prosecution under Michigan law, a plaintiff has the difficult burden of proving four elements: (1) that the defendant has initiated a criminal prosecution against him; (2) that the criminal proceedings terminated in his favor; (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions; and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.  *Id.* at 609-10.

As the Michigan Supreme Court has explained, a claim asserted "against a private person requires proof that the private person instituted or maintained the prosecution and that the prosecutor acted on the basis of information submitted by the private person that did not constitute probable cause."  *Matthews*, 572 N.W.2d at 610

---

[5]Indeed, Plaintiff certainly had knowledge that Defendants were enforcing the Ruling after the expiration of the 90 days.  Plaintiff could have challenged that enforcement in state court, which provides mechanisms by which to challenge actions of the Racing Commission.  *See* Mich. Comp. Laws § 431.316.

[6]To the extent Plaintiff asserts any claim for malicious prosecution related to his 2008 ejection from Pinnacle Grounds, any such claim cannot proceed for the reasons stated in the court's order granting Defendant Grant's motion for summary judgment.

11

(emphasis added).  Furthermore, "initiation of the prosecution is at the exclusive discretion of the prosecutor," *id.* at 613 n.24 (emphasis added), and "the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause."  *Payton v. City of Detroit*,  536 N.W.2d 233, 242 (Mich. Ct. App. 1995).

Here, Plaintiff's complaint fails as a matter of law to set forth sufficient facts to establish a malicious prosecution claim against Parker or White.  Contrary to his assertions in his response, his complaint does not allege that Parker or White initiated any criminal proceedings.  Rather, his complaint states simply that Plaintiff was "ejected for trespassing and charged in District Court."  (Compl. ¶ 36.)  There are no allegations in the complaint which tie Parker or White to the initiation of those proceedings. Moreover, probable cause existed to prosecute Plaintiff for trespassing pursuant to Stewards' Ruling 79, which barred Plaintiff from the grounds of Michigan racetracks. According to the allegations in the complaint, Jim Bowes authorized Plaintiff to submit a license application to the Stewards at Great Lakes Downs and, on May 22, 2006, "Plaintiff was allowed on the Racetrack and the Stewards accepted Plaintiff[']s License application and processed it . . . "  (*Id.* at 31.)  There are no allegations in the complaint that Plaintiff was granted permission after the date of May 22, 2006 to enter the racetrack grounds.  Thus, Plaintiff's claim for malicious prosecution must be dismissed for a failure to allege facts sufficient to show that White or Parker instituted the proceedings and a failure to allege facts showing a lack of probable cause.  *See Matthews*, 572 N.W.2d at 609.

### D.  Due Process

12

Plaintiff alleges various violations of procedural due process. These violations relate to the withholding of an application in 2006, an alleged failure to act on Plaintiff's complaint to Commissioner White in 2006, an alleged failure to approve or deny a license in 2006, and an alleged failure to schedule a hearing following the July 15, 2008 expulsion from Pinnacle Downs. The court agrees with Defendants that Plaintiff has failed to state a claim for a violation of due process with respect to any of these events.

The Fourteenth Amendment to the United States Constitution prohibits a state actor from "depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and a plaintiff may bring a § 1983 suit for violation of procedural due process, *Zinerman v. Burch*, 494 U.S. 113, 125 (1990). "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinerman*, 494 U.S. at 125-26).

For purposes of § 1983 procedural due process claims, the Sixth Circuit follows "a two-part analysis in assessing the Plaintiff's . . . claim, asking first, whether the alleged deprivation involves a protected property interest, and second, whether 'the procedures attendant upon that deprivation were constitutionally sufficient.'" *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Accordingly, the court must first inquire whether

13

Plaintiff has shown that their claim involves a protected property interest before

proceeding to the inquiry regarding whether any deprivation of the protected property

interest was afforded constitutionally required due process.  *See Hamilton v. Myers*, 281

F.3d 520, 529 (6th Cir. 2002) (citing *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir.

1997)).

### 1.  Property Interest

"Property interests are not created by the Fourteenth Amendment, rather they

are created and defined by independent sources, such as state law."  *Hamilton*, 281

F.3d at 529 (citing *Brotherton v. Cleveland*, 923 F.3d 477, 480 (6th Cir. 1991)).   As the

Sixth Circuit has explained:

> Even though individuals often claim property interests under various
> provisions of the Constitution, such interests are not created by the
> Constitution; nor may individuals manufacture a property interest.
> Unilateral expectations of a property interest are insufficient to trigger due
> process concerns.  Instead, property interests "are created and their
> dimensions are defined by existing rules or understandings that stem from
> an independent source such as state law-rules or understandings that
> secure certain benefits and that support claims of entitlement to those
> benefits."

*Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001) (quoting *Parratt v. Taylor*,

451 U.S. 527, 529 n. 1 (1981).  Plaintiff, here, has failed to identify a constitutionally

protected property interest sufficient to trigger a right to due process.

All of Plaintiff's allegations regarding due process violations relate to the

treatment of his 2006 and 2008 applications for a license.  Michigan courts, however, do

not recognize a protected property interest in an application for, as opposed to a

renewal of, a license.  Indeed, "Michigan courts have held that the holder of a liquor

license has a constitutionally protected interest and is therefore entitled to proper

14

proceedings prior to making decisions regarding renewal or revocation." *Id.* at 609-610

(citing *Bisco's, Inc. v. Michigan Liquor Control Commission*, 238 N.W.2d 166, 167 (Mich.

1976) (holding that a current holder of a liquor license has a property interest such that

an application for renewal cannot be denied without due process protections). Thus,

"once a liquor license has been issued and expenditures have been made in reliance on

it, the licensee has acquired an interest 'secured by existing rules or understanding[s.']"

*Id.* at 610 (citing *Bisco's*, 238 N.W.2d at 167 n. 3). However, the Sixth Circuit held in

*Shamie v. City of Pontiac*, 620 F.2d 118 (6th Cir. 1980), "that a first time liquor license

applicant was not entitled to procedural due process rights under Michigan law." *Id.*

Therefore, in Michigan, an applicant for a liquor license,

> as distinguished from a license holder facing renewal or revocation
> proceedings, does not have a protected interest. The holder of a liquor
> license may well have a legitimate claim of entitlement to its renewal.
> One applying for a liquor license has no such claim of entitlement. In the former
> case there is a 'property' interest; in the latter there is none.

*Id.* (citing *Shamie v. City of Pontiac*, 443 F. Supp. 679, 683 (E.D.Mich. 1977), aff'd in

part, 620 F.2d 118). The same is true for first-time applicants for an entertainment

permits, *id.* (citing *Bradfield v. Blesma*, 675 F. Supp. 382 (W.D. Mich. 1987)), and the

same is true in this case. From the allegations on the face of the complaint, Plaintiff did

not have a license at the time of his application in 2006 or in 2008.[7] Accordingly, he did

---

[7]Plaintiff now appears to argue that he was given a license in may of 2006 but
ordered not to work until the Office of the Racing Commission had reviewed Plaintiff's
situation. (*See* Pl.'s Resp. at 13-15.) First, the court finds that Plaintiff's current
argument is contrary to the allegations in the complaint, in which Plaintiff specifically
alleged that the Stewards only "accepted" Plaintiff's application and "processed it,"
(Compl. at ¶ 31), and that the license application was sent to the the Racing
Commissioners for review, (*Id.* at ¶ 32.) The complaint also alleges that Plaintiff
checked weekly with the Stewards but that they informed him they "were processing the

not have a constitutionally protected property interest.[8]  Thus, any claims related to the

denial of, or failure to act upon, his licensing applications fails as a matter of law.

Further, Plaintiff has not identified any property right implicated by the denial of a

––––––––––––––––––––––

application." (*Id.* at ¶ 35.) Plaintiff's complaint states that Plaintiff went to the racetrack on July 18, 2006 "to find out if his License application was approved" when he was ejected for trespassing and charged in District Court.  (*Id.* at ¶ 36.)  Thus, the court finds that Plaintiff's current contention that he was issued a license is contrary to the allegations in the complaint.

Moreover, even considering allegations beyond the face of the complaint, the court is not convinced that Plaintiff's argument is well-founded.   Plaintiff apparently relies on two documents, one of which appears to be a receipt for his license application and one of which is a referral to the Racing Commission, which include a license number on the documents.  (Compl. Exs. 31, 32.)  These documents, however, do not on their face show that Plaintiff was issued a license, but rather show that he was issued a license *number*, which could be issued on the date of the application.

Finally, even if Plaintiff had been issued a license, the court nonetheless finds that the license, in this case, did not give rise to a constitutionally protected property interest.  Accepting as true, *all* of Plaintiff's allegations, including those newly-asserted allegations that he was issued a license in 2006, Plaintiff contends that he was issued the license but that he was simultaneously "ordered not to work until approved by the Commission." (Pl.'s Resp. at 14.)  Thus, even under Plaintiff's newest version of events, Plaintiff was, at most, only given a conditional license which was subject to final approval before any work could be done.  This type of quasi-license does not give rise to a property right.   "For due process protections to attach to a property right, a person must have more than a unilateral expectation." *Berkowitz v. Department of Licensing and Regulation*, 339 N.W.2d 484, 488 (Mich. Ct. App. 1983) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).   "Rather, he must have a legitimate claim of entitlement." *Id.*  Here, Plaintiff had, at most, an "expectation" that he would be granted a full, working license.  This is not enough, and the court would dismiss the due process claim even if it concluded that Plaintiff had properly alleged in the Complaint that he was granted a license in 2006 which was thereafter withheld without affording him due process.

[8]To the extent Plaintiff asserts a substantive due process claim, the same analysis applies. *See ABCDE Operating, LLC v. City of Detroit* , No. 08-CV-14908, 2009 WL 2922879, *5 (E.D. Mich. Sept. 9, 2009) (Steeh, J.) ("Only the holder of a license or permit, not one seeking a license or permit, has a legally-protectible property interest which would confer standing to bring a substantive due process claim.").

hearing in 2008.[9]  Plaintiff's complaint fails to state a claim for any violation of due process because he has failed to allege any property right which was deprived by Defendants.

## 2.  Adequate Procedures

Moreover, even if Plaintiff had alleged a protected property right, his due process claims would nonetheless fail as he was provided adequate procedural safeguards before depriving him of a property interest.

Generally, procedural due process requires a state actor to "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)).  The issue for the district court to address is: "whether plaintiffs were afforded the process due to protect their property rights."  *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).   "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mator*, 301 F. App'x at 480 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, the underlying reason for denying Plaintiff's request for a license was the existence of Stewards' Ruling 79 which, as stated above, cannot be challenged because it was issued outside the statute of limitations.  However, prior to the issuance of the Ruling, Plaintiff was provided with notice of the hearing and an opportunity to be

---

[9]Plaintiff cannot rely on the Ohio Racing Commission's decision to rescind his Ohio license as a deprivation of a property interest, because the Defendants in this case owed no process to Plaintiff related to his Ohio license.

17

heard.  Moreover, with respect to his licensing applications, the licensing application process is subject to review by the Michigan Circuit Court.  *See* Mich. Comp. Laws § 431.316.  Plaintiff could have appealed the actions of Defendants through the state court process.  Accordingly, even if he had been deprived of a property interest, he was afforded due process as a matter of law.  *See Brody v. City of Mason*, 250 F.3d 432, 437-38 (6th Cir. 2001) (finding due process requirements for a zoning hearing were satisfied when the plaintiff had an opportunity to speak during at least one hearing, the hearing was conducted by an impartial tribunal, and the opportunity to seek review of the decision was provided).  Plaintiff's due process claims must be dismissed.

18

**E.  Rule 8 Violations**

Defendants argue that Plaintiff's complaint should be dismissed in its entirety because the pro se pleading does not meet the requirements of Federal Rule of Civil Procedure 8.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The court finds that Plaintiff sufficiently pleaded the claims outlined above so as to meet the requirements of Rule 8.  Although the pro se complaint is inartfully drafted, it offers detailed factual allegations in support of the theories of relief discussed above.  These claims will be dismissed, not because of the inadequacy of the pleadings, but because the facts as set forth in purported support of them cannot sustain the identified causes of action.

To the extent Plaintiff's complaint attempts to articulate any causes of action other than those identified above, his complaint has failed to meet the requirements of Rule 8.  To state a claim upon which relief may be granted, a plaintiff must show, construing the complaint in a light most favorable to the plaintiff and accepting all the factual allegations as true, *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005), "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In his complaint and in his response to Defendants' motion, Plaintiff includes broad, conclusory language which could be construed as an attempt to assert various other types of claims.  If so, his complaint fails to meet the standard of Rule 8, particularly in light of *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

19

While the court has attempted to construe Plaintiff's pro se complaint liberally, "the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at

1949.

"The pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 570).  Many of Plaintiff's

allegations amount to little more than such unadorned, conclusory allegations of legal

violations.   "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).   If Plaintiff's complaint can be

interpreted to assert claims other than those specifically identified above, his complaint

does not contain allegations sufficient to cross "the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.[10]

_____

[10]The court notes that on July 23, 2009, Plaintiff submitted a one-page,
handwritten "Notice," in which he notified the court that he was in the process of
preparing an amended complaint.  No motion to amend the complaint has been filed,
nor has Plaintiff submitted any such proposed amended complaint to the court for
consideration.  Similarly, on December 22, 2008, Plaintiff filed a document entitled
"Defendant's have violated Plaintiffs Constitutional Rights under Color of Law," which
purports to provide additional allegations or, perhaps, corrections to the complaint.  The
document was docketed as a "Statement of Constitutional Rights Violations," and was
not accompanied by any motion, nor was Plaintiff granted leave to file such a document.
The document is not recognizable as a motion to amend or a proposed amended
complaint or as any other type of legitimate pleading under the federal or local rules.
Despite Plaintiff's pro se status, he still must abide by the applicable rules of procedure

**IV. CONCLUSION**

IT IS ORDERED that Defendants motion to dismiss [Dkt. # 28] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for declaratory rulings [Dkt. #

31] is DENIED.


<u>S/Robert H. Cleland</u>
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, December 31, 2009, by electronic and/or ordinary mail.


<u> S/Lisa G. Wagner</u>
Case Manager and Deputy Clerk
(313) 234-5522

---

and must also act diligently to preserve his rights.  Plaintiff had every opportunity to file
a motion to amend the complaint or some other type of proper motion.  He did not.  The
court therefore bases this order on the complaint, as filed and  without amendment, and
will disregard both the December 22, 2008 filing as well as the July 23, 2009 filing.  If
this litigation were to proceed, the court would likely strike both documents as
improvidently filed, but given Plaintiff's pro se status and the conclusion of this lawsuit,
the court will allow the documents to remain on the docket.

S:\Cleland\JUDGE'S DESK\C3 ORDERS\08-14289.BEAUDOIN.1983.Dismiss.DueProcess.wpd